JOHN HRONEK

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 12, 1890.*

1. STATUTES—*title of an act—and of the subject to be expressed therein.* It is not necessary that the title of an act shall express all of the minor divisions of the general subject to which the act relates. It is sufficient if it expresses the general subject of the act, and all the minor subdivisions germane to the general subject will be held to be included in it. But if the title expresses such minor subdivisions which, without such expression, would be held to be included within the general subject, such expression will not render the title obnoxious to the constitutional provision.

2. CRIMINAL LAW—*explosives—manufacture, use, etc.—act of 1887— of the title, and the subject of the act.* The act entitled "An act to regulate the manufacture, transportation, use and sale of explosives, and to punish an improper use of the same," approved June 16, 1887, is not obnoxious to section 13, article 4, of the constitution, "that no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title does not express two subjects, but only one, and all the provisions of the act are within the subject expressed in the title, and are germane to each other and the general scope and purpose of the act.

3. The regulation of the use of explosives necessarily implies the right to punish an improper use. Two different subjects are not included or expressed in or by the title, for the punishment of an improper use flows necessarily from the main or substantive object as stated in the title,—*i. e.,* to regulate the use of explosives.

4. SAME—*use of explosives—intent—how shown—possession—declarations, etc.* On the trial of one for the manufacture, etc., of explosives with intent to take the life of another, the fact that the accused procured the explosive may be shown by proof that it was found in his possession, and the unlawful intent is manifested by the nature of the substance itself, his concealment of it, and his contemporaneous declarations of his intent.

5. Where a person is found in possession of dangerous explosives, and has avowed the intention of using them for a particular unlawful purpose, the presumption will arise that he procured the same for such unlawful use, especially when his business does not call for the use or possession of them.

6. The intent of a party can ordinarily be shown only by inferences drawn from his acts and from his declarations.

7. SAME—*possession of dynamite—explanation—an instruction construed—whether excluding evidence offered in defense.* On the prosecution of one for the manufacturing, compounding, buying, selling, etc., of dynamite, with intent to destroy human life therewith, under an act that took effect on July 1, 1887, the defendant asked an instruction that to constitute the crime the acts charged should be shown to have been done after July 1, 1887. The court added this: "Therefore the jury must disregard any evidence as to the making, compounding or procuring dynamite, at C.'s house or elsewhere, prior to said date." The defendant, to account for dynamite found in his possession, testified that it was left in his house in 1886, by one K.: *Held*, that the instruction, as modified, was not calculated to take from the consideration of the jury the testimony explaining the defendant's possession of the dynamite. The instruction related solely to the elements necessary to constitute the crime charged, and had no reference to the defense.

8. SAME—*accessory.* Under a statute which provides that any person abetting or in any way assisting in certain denounced acts shall be deemed a principal, and upon conviction shall be subject to the same punishment as provided in the preceding sections relating to principals, a defendant, if guilty as an accessory before the fact, is to be indicted and punished as a principal.

9. SAME—*verdict—certainty as to party found guilty.* On a separate trial of one of several defendants, the record showed the coming of the People by the State's attorney, and J. H., (the defendant,) impleaded, etc., and the selection of the jury, and trial. The jury found "the defendant" guilty, without specifying his name: *Held*, that the verdict was not uncertain as to the party found guilty.

10. SAME—*place of imprisonment—act of 1887, to regulate manufacture, etc., of explosives—construed.* Section 1 of the act of 1887, "to regulate the manufacture, transportation, use and sale of explosives, and to punish an improper use of the same," provides that any one found guilty of the acts therein denounced "shall be deemed guilty of a felony, and upon conviction thereof shall be punished for a term not less than five years nor more than twenty-five years:" *Held*, that the imprisonment intended is imprisonment in the penitentiary.

11. WITNESSES — *competency—religious test.* Section 3, article 2, of the State constitution, has abrogated the rule which obtained prior to 1870, restricting the competency of witnesses on account of defect of religious belief, and there is no longer any test of qualification in respect to religious belief or want of the same which affects the competency of citizens to testify as witnesses in courts of justice.

12. SAME—*former decision.* The case of *Central Military Tract Railroad Co.* v. *Rockafellow*, 17 Ill. 541, on the competency of a witness de-

pending upon his religious belief, overruled *Noble* v. *People*, Beecher's Breese, 54; and section 3, article 2, of the constitution, abrogated the former rule that had obtained in this State, and there is now no religious test as to the competency of any witness.

13. SAME—*credibility*—*elements to be considered*—*detectives*—*police officers*. On the trial of one for crime, there is no error in refusing an instruction asked by the defense, that the evidence of private detectives and the police "should be received with a large degree of caution." All the circumstances connected with a witness, or that may tend to affect his credibility or bias his judgment, are competent to be shown, and considered by the jury in determining the weight and credit to be given to his testimony.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. JULIUS GOLDZIER, for the plaintiff in error:

The law under which this prosecution is based is unconstitutional and void, it being obnoxious to section 3, article 4, of the constitution. Both the title and the act itself contain more than one subject. Cooley's Const. Lim. 148; *Young* v. *State*, 47 Ind. 150.

The penalty part of the statute is void for uncertainty. It denounces imprisonment, without stating whether in the county jail or in the penitentiary. It is competent for the legislature to punish a misdemeanor by imprisonment in the penitentiary. *Lamkin* v. *People*, 94 Ill. 501; *Thomas* v. *People*, 113 id. 531.

If, then, it is competent for the legislature to create felonies punishable otherwise than by death and penitentiary, then, according to the rules of construction, a doubt as to the meaning of the law should be solved in the prisoner's favor. Bishop on Stat. Crimes, sec. 218; *Homer* v. *State*, 1 Ore. 167.

A joint indictment means a joint trial, unless the court directs otherwise. *Spies* v. *People*, 122 Ill. 1; *Maton* v. *People*, 15 id. 536.

Plaintiff in error being tried with Frank Chleboun, the verdict finding "the defendant" guilty is void for uncertainty.

1 Bishop's Crim. Proc. sec. 1005; *Farn* v. *State,* 54 Ga. 249; *Lambert* v. *Borden,* 10 Bradw. 648.

The court, by instructing the jury to disregard any evidence as to the making, compounding or procuring of any dynamite, at Chapek's house or elsewhere, prior to July 1, 1887, deprived the prisoner of the benefit of the evidence explaining how any dynamite was left in his house prior to that date.

As to the *corpus delicti* and its proof, see Hale's Pleas of the Crown, 200; *Evans* v. *Evans,* 1 Hagg. Ch. 105; Burrill on Circumstantial Ev. 733; *People* v. *Bennett,* 49 N. Y. 143; 3 Greenleaf on Evidence, sec. 131; *Ruloff* v. *People,* 18 N. Y. 179; *Smith's case,* 21 Gratt. 819; *Lynn* v. *State,* 5 Humph. 83; *Bergen* v. *People,* 17 Ill. 426; Bishop on Crim. Evidence, sec. 632.

Chleboun, not believing in a future state of existence and future rewards and punishment, was not a competent witness. Starkie on Evidence, 30; Taylor on Evidence, 1177; 1 Greenleaf on Evidence, sec. 368; *Railroad Co.* v. *Rockafellow,* 17 Ill. 553; *Jackson* v. *Gridley,* 18 Johns. 103.

Mr. GEORGE HUNT, Attorney General, for the People:

The act does not embrace more than one subject. The general subject is explosives, and that is expressed. Only the general subject of the act is required to be expressed in the title. *Mix* v. *Railroad Co.* 116 Ill. 502; *Abington* v. *Cabeen,* 106 id. 200; *People* v. *Hazelwood,* 116 id. 319; *Montclair* v. *Ramsdell,* 107 U. S. 147; *People* v. *Brislin,* 80 Ill. 423; *Timm* v. *Harrison,* 109 id. 593; *Burke* v. *Monroe County,* 77 id. 610.; *Plummer* v. *People,* 74 id. 361.

The general purpose of a constitutional provision is accomplished when a law has but one general object, which is fairly indicated by its title. Cooley's Const. Lim. (1st ed.) 144; *People* v. *Mahoney,* 13 Mich. 495.

As to cases having a bearing on constitutional questions, see *Insurance Co.* v. *Mayor,* 8 N. Y. 253; *Billings* v. *Mayor,*

68 id. 413; *People* v. *Commissioners,* 47 id. 501; *Menendorff* v. *Duryea,* 69 id. 557; *Fuller* v. *People,* 92 Ill. 182; *Magner* v. *People,* 97 id. 320; *Cole* v. *Hall,* 103 id. 30; *Prescott* v. *Chicago,* 60 id. 121; *Potwin* v. *Johnson,* 108 id. 71; *O'Leary* v. *Cook County,* 28 id. 534; *Neifing* v. *Pontiac,* 56 id. 172; *Johnson* v. *People,* 83 id. 431; *Timm* v. *Harrison,* 109 id. 593; *Hawthorn* v. *People,* id. 302; *Larned* v. *Tiernan,* 110 id. 173; *Fuller* v. *People,* 92 id. 182; *People* v. *Wright,* 70 id. 389; *Blake* v. *People,* 109 id. 173.

The statute is not void for uncertainty as to the punishment, as the crime is made a felony, which is punishable by death, or imprisonment in the penitentiary.

The record, taken together, shows that plaintiff in error was the only person tried, and there is no uncertainty about the matter.

There is no error in the record, and the verdict was amply justified, if the jury believed the witnesses for the People.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The plaintiff in error, John Hronek, was indicted, with Frank Chapek, Frank Chleboun and Rudolph Sevic, for violation of an act of the legislature of this State, entitled "An act to regulate the manufacture, transportation, use and sale of explosives, and to punish an improper use of the same," approved June 16, 1887, and in force July 1, 1887. The first count charged the defendants with unlawfully making dynamite, with the unlawful intention of destroying the lives of certain persons therein named, and in the five remaining counts the defendants were charged successively in such several counts with manufacturing, compounding, buying, selling and procuring dynamite, with the same unlawful purpose and intent. The defendant Hronek was alone put upon trial, and that trial resulted in a verdict of guilty, and fixing his punishment at twelve years' imprisonment in the penitentiary. Motions

for a new trial and in arrest of judgment were severally overruled, and the said defendant was sentenced on the verdict. Numerous grounds are urged for reversal, which we shall consider substantially in the order they are made.

It is insisted that the statute upon which the prosecution is based is unconstitutional, in that it is obnoxious to section 13, of article 4, of the constitution of the State, which provides, "that no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The specific objection is made, that two distinct subjects are expressed in the title. That objection is without merit. The act is entitled, "An act to regulate the manufacture, transportation, use and sale of explosives, and to punish an improper use of the same." The regulation of the use necessarily implies the right to punish an improper use. To "regulate," means to adjust by rule or regulation, and any attempt to fix rules for the manufacture, transportation, use and sale of explosives that did not also prescribe punishment for violation of such rules and regulations, would necessarily be imperfect. Two different subjects are not included or expressed in or by the title, for the punishment of an improper use flows necessarily and legitimately from the main or substantive object as stated in the title, *i. e.*, to regulate the use, etc., of explosives. It is not necessary that the title shall express all of the minor divisions of the general subject to which the act relates, and it is sufficient if it express the general subject of the act, and all the minor subdivisions germane to the general subject will be held to be included in it. But if the title expresses such minor subdivisions which, without such expression, would be held to be included within the general subject, such expression will not render the title obnoxious to the constitutional provision. *Plummer* v. *People*, 74 Ill. 361; *Fuller* v. *People*, 92 id. 182; *Magner* v. *People*, 97 id. 320; *Cole et al.* v. *Hall*, 103 id. 30; *Prescott* v. *City of Chicago*, 60 id. 121; *Potwin* v. *Johnson*, 108 id. 71; *Timm* v. *Harrison*, 109 id. 593; *Hawthorn* v. *People*,

id. 302; *People* v. *Wright*, 70 id. 389; *City of Virden* v. *Allan*, 107 id. 505.

The contention that the statute itself treats of two separate and well defined subjects is not tenable. It is said that the first three sections of the act relate to the "manufacture and use of explosives for illegal purposes," while the four remaining sections relate to "the manufacturing, sale and transportation of explosives for legitimate purposes." It is therefore claimed that the former should properly be found in the Criminal Code, and are not germane to the other sections of the act, which are mere police regulations. The general subject of the statute is the manufacture, transportation, use and sale of explosives, and it can not be said, because one section provides for a license or permit to be obtained for their manufacture, and another prohibits the storing of explosives within a certain distance of inhabited dwellings, and another punishes fraudulent acts to procure the transportation of explosives in public conveyances, that still another section or other sections making it unlawful to manufacture or procure such explosives with the intent to use the same for unlawful destruction of life or property, and affixing a penalty therefor, would not be within the same general subject of legislation. It can no more be said that the prohibition, under a penalty, against storing explosives in dangerous proximity to a dwelling, is a police regulation, than that a like prohibition against manufacturing or procuring the same for an unlawful use or purpose is a police regulation. All of the provisions of the act are within the subject expressed in the title, and are germane to each other and to the general scope and purpose of the act.

It is next claimed, that the sections of the statute under which this indictment was prosecuted are not sufficiently definite to authorize imprisonment in the penitentiary. Section 1 of the act provides, that whoever shall be guilty of the acts therein denounced, "shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment for

a term of not less than five years nor more than twenty-five years." It is urged, that as it is not stated the imprisonment shall be in the penitentiary, and the statute is highly penal, and requires strict construction, a sentence thereunder to the penitentiary can not be sustained. We are not prepared to adopt this view. The offense is by the act declared to be a felony. A felony is by the Criminal Code of the State declared to be an offense punishable by death or confinement in the penitentiary. While the legislature undoubtedly may provide for the punishment of misdemeanors by imprisonment in the penitentiary, and undoubtedly might, if they saw proper, punish felonies otherwise than by imprisonment in the penitentiary, yet there is nothing in these sections of the act which indicates an intention to do the latter. Applying the well known rule that a criminal statute is to be strictly construed, and that nothing is to be taken by intendment or implication against the accused beyond the literal and obvious meaning of the statute, it is nevertheless clear, we think, when this statute is considered in connection with the general Criminal Code, which it must be presumed the legislature had in contemplation when passing it, the punishment to be inflicted for violation of said sections of the act is by imprisonment in the penitentiary.

It is insisted that the verdict is void for uncertainty, in that it simply finds "the defendant" guilty, without specifying the plaintiff in error by name. Before plaintiff in error was put upon trial a separate trial had been awarded to the defendants Chapek and Sevic. The defendant Chleboun was not put upon trial, but was used as a witness on behalf of the People. The record shows that on the 26th day of November, 1888, at the term of the Criminal Court then being held, the following proceedings were had and entered of record, to-wit:

"*The People of the State of Illinois* v. *John Hronek, impl., etc.*:

"This day come the said People, by Joel M. Longenecker, State's attorney; and the said defendant, as well in his own

proper person as by his counsel, also comes. And now, issue being joined, it is ordered that a jury come," etc. (Then follows the impaneling of a jury.)

It is manifest from the foregoing, that no one was put upon trial other than the defendant Hronek, and the verdict finding "the defendant" guilty could not refer to any other defendant. There was no uncertainty in the verdict.

Complaint is made of the second instruction given on behalf of the People. That instruction told the jury that any person abetting or assisting in the perpetration of the offense mentioned in section 1 of the act, was, upon conviction, to be punished as provided in said first section. This was not error. The statute provides that any person abetting or in any way assisting in making, manufacturing, buying, procuring, etc., such explosives, etc., knowing or having reason to believe that the same are intended to be used by any person or persons, in any way, for the unlawful injury to or destruction of life or property, shall be deemed principal, and upon conviction shall be subject to the same punishment as provided in section 1 of the act. Under this statute, a defendant, if guilty as an accessory before the fact, is to be indicted and punished as principal. In view of the evidence tending to show the connection of plaintiff in error with the other defendants in the perpetration of the offense, the instruction was entirely proper.

It is objected that the court erred in refusing an instruction that the evidence of private detectives and of the police "should be received with a large degree of caution." This instruction does not contain a correct proposition of law. All the circumstances connected with a witness, or that might tend to affect his credibility or bias his judgment, are competent to be shown to and considered by the jury in determining the weight and credit to be given to his testimony. In view of the facts and circumstances thus shown, it is for the jury to determine its weight as matter of fact.

It is urged that the court erred in modifying an instruction asked by the defendant. The instruction, as asked, was as follows: ·

"The jury are instructed, that to constitute the crime charged against the defendant in the indictment, two things are necessary, namely: First, the making, manufacturing, compounding, buying, selling or disposing of the dynamite, or some portion thereof, described in the indictment, on or subsequent to the first day of July, A. D. 1887."

To this the court added the following: "Therefore the jury must disregard any evidence as to the making or compounding or procuring of any dynamite, at Chapek's house or elsewhere, prior to said date." The instruction then proceeds: "Second," etc.

Hronek's defense, in part, consisted in accounting for the dynamite found in his possession by testifying that it was left in his house in the fall of 1886 by one Karafiat, and it became important for the jury to consider testimony tending to show that he was in possession of dynamite in the spring of 1887, prior to the law under which he was prosecuted going into effect, on the first day of July of that year. It is insisted that the effect of the modification was to take from the consideration of the jury this evidence, offered by the defendant, of prior possession of the explosives. It is conceded that such was not the purpose, and it is clear to us that such was not the effect, of the modification. The instruction related solely to the elements necessary to constitute the crime charged. The jury were told, that to constitute the crime it was necessary that the making, etc., of the dynamite must have been on or subsequent to the first day of July, 1887, and that therefore the jury must disregard the making or procuring, etc., prior to that date. It must be presumed that the jury were men of reasonable intelligence, and would understand that what followed the introductory part of the instruction related to what was necessary to constitute the crime, and not to the defense

set up, that the dynamite was in possession of the defendant prior to the date fixed by the instruction. Moreover, the jury, by a lengthy series of instructions, were fairly instructed as to the law of the case, fully as favorably to the defendant as he could rightfully ask. They were told that they must consider all the facts and circumstances proven, and determine therefrom whether the defendant procured, etc., the explosives in question after the law went into force, and that his possession prior thereto would raise no presumption of guilt. It is, we think, impossible that the jury could have been misled, to the prejudice of the plaintiff in error, by the modification. It is not contended that the instruction, when considered as defining what would constitute guilt of the crime charged, and what the jury might properly consider in respect thereof, is not a substantially accurate statement of the law. As the jury were not misled by the modification, to the prejudice of the plaintiff in error, he has no cause of complaint.

Objection is made to the competency of Frank Chleboun, a witness for the People, who was permitted to testify, over the objection of the defendant. He was examined upon his *voir dire*, and avowed his belief in the existence of God and "a hereafter;" that he believed if he swore falsely he would be punished under the criminal laws of the State; that he had never thought seriously of whether God would punish him, either in this world or the next, and had never considered the question whether he would be punished for false swearing in any other way than by that inflicted by the law. He had, it seems, no religious belief or conviction of his accountability to the Supreme Being, either in this world or in any after life. The test of the competency of a witness in respect to religious belief, as generally held, is, does the witness believe in God, and that He will punish him if he swears falsely. It is stated by Rapalje, in his Law of Witnesses, (sec. 11,) that "the great weight of authority, in this country, now is, that it is immaterial whether the witness believes God's vengeance will over-

take him before or after death." This doctrine was approved in *Central Military Tract Railroad Co.* v. *Rockafellow*, 17 Ill. 541, where, after a consideration of the authorities, it was held that all persons are competent to be sworn as witnesses who believe there is a God, and that He will punish them, either in this world or in the next, if they swear falsely; and that a want of such belief rendered them incompetent to take an·oath as witnesses. This case, seemingly, overruled the doctrine of the earlier case of *Noble* v. *The People*, Beecher's Breese, 54. Without pausing here to determine whether the court erred in subjecting the witness to an examination touching his religious belief, (Rapalje on Witnesses, sec. 12, and cases cited,) it may be said that the better practice, and that which now prevails, forbids the examination of the witness in respect thereof on his *voir dire*. If there was error in this regard it was committed at the instance of the defendant, and in his interest, and he can not complain.

Returning to the question of the competency of the witness, the rule seems to be as above stated, unless changed by constitutional provision or legislative enactment. The tendency of modern times, by the courts and in legislation, is towards liberalizing the rule, and in many jurisdictions incompetency for the want of religious belief has been abolished. See Rapalje on Witnesses, sec. 13; Wharton on Evidence, sec. 395.

Has the rule announced by this court in *Central Military Tract Railroad Co.* v. *Rockafellow*, been changed in this State? By section 3 of article 2 of the constitution of 1870, it would seem that a radical change was effected in respect to the matter under consideration. This section guarantees non-interference of the State with the religious faith of its citizens. In *Chase* v. *Cheney*, 58 Ill. 509, it was said: "The only exception to uncontrolled liberty is, that acts of licentiousness shall not be excused, and practices inconsistent with the peace and safety of the State shall not be justified." The section provides: "No person shall be denied any civil or political

right, privilege or capacity on account of his religious opinions; but the liberty of conscience hereby secured shall not be construed to dispense with oaths, or affirmations, excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of the State." No religious belief is required to qualify a citizen to take an oath, and no citizen can be excused from taking an oath or affirmation because of his religious belief. The liberty of conscience secured by the constitution is not to be construed as dispensing with oaths or affirmations in cases where the same are required by law. No man, because of his religious belief, is to be held to be excused from taking the prescribed oath of office before entering upon the discharge of the public duty; nor can he be permitted to testify, because of such religious belief or opinion, except upon taking the oath or making the affirmation required by law. Now, as before the adoption of this provision, oaths are to be taken and affirmations made whenever required by law, but the right to take such oath or make such affirmation, if such right be a civil right, privilege or capacity, can not be denied to any citizen.

It is said, that one who holds proscribed religious opinions is incompetent,—that is, has not the legal capacity to testify. The incapacity, if it exists, grows out of and is based upon his failure to hold certain religious beliefs and opinions in accord with the prevailing religious opinions of the people, and the contention is, that he should not, by reason of such incapacity, be permitted to testify, however great and important the interest at stake to himself, his family, his neighbor, or the State. It is clear, from the authorities, that the rule contended for does not apply when the witness is testifying in his own behalf; but if the life, liberty, reputation or property of his family or neighbor be involved, or his testimony be necessary to the protection of society, he is, under such rule, to be excluded from the privilege of testifying in courts of justice because of such incapacity. If it exists at all, the incapacity is created

by law, and it is therefore a civil incapacity. The constitution provides that no person shall be denied any civil or political right, privilege or capacity on account of his religious opinions. In Bouvier's Law Dictionary, capacity is defined to be "ability; power; qualification or competency of persons, natural or artificial, for the performance of civil acts depending on their state and condition as defined or fixed by law." It is also defined as follows: "power; competency; qualification; ability; power or qualification to do certain acts." Am. and Eng. Ency. of Law.

The obvious meaning of the provision in the constitution is, that whatever civil rights, privileges or capacities belong to or are enjoyed by citizens generally, shall not be taken from or denied to any person on account of his religious opinions. As said by the Court of Appeals of Kentucky, in construing a similar provision of the constitution of that State, in *Bush* v. *Commonwealth*, 80 Ky. 244: "It is a declaration of an absolute equality, which is violated when one class of citizens is held to have the civil capacity to testify in a court of justice because they entertain certain opinions in regard to religion, while another class is denied to possess that capacity because they do not conform to the prescribed belief." It is manifest, that if the legislature may prescribe the test of belief in rewards and punishments, they may impose any other test or qualification that, in the judgment of those entertaining the dominant belief, may be necessary to afford the requisite sanction. In *Perry's case*, 3 Gratt. 632, a like conclusion was reached in construing a constitutional provision that "all men shall be free to profess, and, by argument, maintain, their opinions in matters of religion; and the same shall in nowise affect, diminish or enlarge their civil capacities."

We are of the opinion that the effect of this constitutional provision is to abrogate the rule which obtained in this State prior to the constitution of 1870, and that there is no longer any test or qualification in respect to religious opinion or be-

lief, or want of the same, which affects the competency of citizens to testify as witnesses in courts of justice. It follows, that there was no error in permitting the witness to testify.

The only remaining question which we deem it necessary to consider, is the claim that the evidence is insufficient to warrant a conviction. It is insisted that there is no proof of the *corpus delicti*. The *corpus delicti* of the offense charged in the indictment is the making, procuring, etc., of dynamite, with intent to use the same for the unlawful destruction of the lives of the persons named in the indictment. At the time of the arrest of plaintiff in error a large quantity of dynamite and a number of bombs, of different make and material, were found in his possession. It was proved that he said, as indicating his intent, that he must kill Gary, Grinnell and Bonfield, and that he would throw the bombs at them. In his statement made to the officers after his arrest, which was reduced to writing, and which he introduced in evidence at the trial, it appears that he went with Chleboun and Chapek to Aldine Square, for the purpose of finding Grinnell's residence, and that the intent of his companions, as expressed at the time, was to find Grinnell's house, and that they were talking of killing Bonfield. It appears, also, that he pointed out to said persons Grinnell's house, or what he thought to be his house. It is also shown that on different occasions he threatened to take the lives of the three persons named in the indictment, and said that he would throw the bombs at them in the court rooms, or on the street, or wherever he might meet them. Indeed, it is not questioned that there is sufficient evidence of the intent of plaintiff in error to destroy the lives of said persons by means of such explosives, if it was believed by the jury to be true.

It is insisted, however, that there can be no presumption that Hronek had procured the dynamite with the unlawful intent indicated, from the fact that such dynamite was found in his possession. Where a party is found in possession of

explosives, and has the avowed intention of using them for a particular purpose, the presumption would arise that he procured the same for such unlawful use. It is to be remarked, that there was nothing in the business or vocation of Hronek that would call for or require the use or possession of explosives. Moreover, it was shown by the witness Chleboun that he was at Hronek's house the last Sunday in May, 1888, when Hronek showed him some unfilled bombs, and Hronek then said that he would get dynamite with which to load them. He at that time spoke of an opportunity he had to kill Bonfield; that he did not do it because he did not have the necessary weapon, but that he regretted it very much. The witness saw no dynamite that day. In June following, the witness again saw Hronek, at his request, and Hronek had a number of bombs which were charged. Some of them had fuses attached, and others had fulminating caps. Can it be questioned, that if no explanation had been offered by Hronek as to when and how he came into the possession of the dynamite, the fact of its being in his possession in the month of June, with the avowed intent of using it in the particular unlawful way charged, coupled with his declaration, in May, that he would procure dynamite for the accomplishment of such unlawful purpose, would be sufficient to maintain a conviction for unlawfully procuring the explosive with the intent to use the same? In other words, would not the jury be justified in finding therefrom that the *corpus delicti* had been proved? The fact that he procured the explosive is shown by his having it in his possession. The unlawful intent is manifested by the character of the substance itself, his concealment of it, and his cotemporaneous declarations of his intent. A jury, from the necessity of the case, must be allowed to draw conclusions from the facts proved, and intent can ordinarily be shown only by inferences drawn from the acts of the party and from his declarations. Hronek is here shown to have been in the actual possession of the dynamite in June, 1888, and subsequently,

by unquestioned evidence, and the fact of his intention is shown by his declarations and acts. If, from the facts proved, the conclusion is irresistible, if the testimony is believed, that the offense was committed, then the *corpus delicti* is established.

Some question is made in respect of the evidence of the date when the dynamite was procured by Hronek. He testified, that one Karafiat left it at his house in the fall of 1886, and had never called for it. Without entering into a discussion of the evidence, it must be said that there was much in his own testimony, as there was also in the testimony of the witness Chleboun, that tended to discredit his evidence. The question was fully and fairly submitted to the jury as to whether or not he procured the dynamite, with the unlawful intent charged, after the first day of July, 1887, when the statute went into effect. They were told, in numerous instructions, that unless they believed, from the evidence, beyond a reasonable doubt, that he procured the same with the specific intent charged, on or subsequent to that date, they must acquit. Without extending this opinion, already too long, by an analysis of the evidence, it must suffice for us to say, that we have carefully considered the record and the facts and circumstances proved, and are unable to say that the jury were palpably wrong in the conclusion reached by them. It is not enough that we, sitting as a jury, might have found differently. They saw the witnesses, had means of determining their credibility which we do not possess, and before we would be justified in setting aside their verdict for error in finding of fact, the error must be palpable.

Other minor objections are urged, which we have carefully considered, and there is no reversible error in them, and no good purpose would be served, either to the defendant or the profession, by their discussion.

We find no error in this record for which the judgment of the court below should be reversed, and it is accordingly affirmed.

*Judgment affirmed.*