THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SIDNEY CAMPBELL *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. ROBBERY—*distinction between robbery and larceny from the person.* The distinction between robbery and larceny from the person lies in the force or intimidation used, and if the article is so attached to the person or clothes as to create resistance, however slight, or if there be a struggle to keep it, the taking is robbery.

2. SAME—*to constitute robbery the taker need not retain possession of the article.* While there must be actual severance of the article from the person to constitute robbery, still the crime is consummated if the taker retains possession but a short time; and the fact that the owner seizes the taker's hand just as he has removed the article and recovers possession thereof in the struggle, does not make the crime less than robbery.

3. SAME—*what justifies conviction for robbery.* Proof that one of the two defendants charged with robbery assisted the other in his struggle to retain possession of a diamond he had snatched from its owner, and that the two defendants were together during the evening and waited together for a street car, which they boarded with the owner of the diamond just before the taking, justifies their conviction for robbery.

4. INSTRUCTIONS—*when an instruction should not be given.* An instruction which tells the jury that the fact that a witness is a policeman or detective does not render his testimony incompetent or furnish ground for its arbitrary rejection; that his business is a lawful one, and that while the jury may consider the business and surroundings of the witness they must consider his testimony with candor and fairness, falls within that class of instructions which call attention to particular witnesses, and should not be given.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

CHARLES E. ERBSTEIN, for plaintiffs in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT E. TURNEY, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error, Sidney Campbell and Robert Boyd, were found guilty in the criminal court of Cook county of robbing Maurice A. Schenick of a diamond pin worth $400, and Campbell was sentenced to the reformatory and Boyd to the penitentiary.

It appears from the evidence that about midnight of August 12, 1907, as Maurice A. Schenick, proprietor of a down-town restaurant in Chicago, was about to take a street car at Madison and Clark streets to go to his home he was jostled by several men, and when he had stepped on the car he felt a jerk at his diamond pin or stud, which was fastened in his shirt front. Schenick testified that, his attention being called by the jerk, he saw plaintiff in error Campbell with the stud in his hand and entirely out of the shirt; that he grabbed Campbell's hand and held it with his left hand, afterwards securing the stud; that the spiral fastening was pretty well smashed in the scuffle. Campbell, when on the stand and examined by his own attorney, admitted that he tried to take the pin, but testified that "as soon as it was kind of half out" Schenick made a grab for him and that the pin was not wholly out of the shirt at all. Schenick further testified that as Campbell grabbed the pin plaintiff in error Boyd grabbed his (witness') left arm and tried to break the hold on Campbell's hand, while two other men who accompanied plaintiffs in error beat the witness. Schenick, and officer Pierce, who had been attracted to the scene, then chased Campbell and caught him. The officer took charge of Campbell and started for the station, surrounded by a crowd of people. Plaintiff in error Boyd followed with the crowd, and Schenick thereupon pursued and caught him. The two other companions of Campbell were arrested by two other police officers. The only witnesses who testified for the prosecution were Schenick and these three officers. Plaintiffs in error themselves were the only witnesses for the defense.

Counsel for plaintiffs in error contends that the evidence does not show that the alleged crime was robbery, but, at most, only larceny from the person. The difference between stealing from the person of another, and robbery, lies in the force or intimidation used. (*Hall* v. *People,* 171 Ill. 540.) In the absence of active opposition, if the article is so attached to the person or clothes as to create resistance, however slight, or if there be a struggle to keep it, the taking is robbery. (2 Bishop on New Crim. Law, sec. 1167; 1 Wharton on Crim. Law,—9th ed.—sec. 854.) Where a diamond pin, with a cork-screw stalk twisted in a lady's hair, was snatched out and a part of the hair was drawn away at the same time, it was held that this constituted robbery; and where a watch was fastened by a steel chain, which was broken in snatching the watch, it was held robbery. (2 Russell on Crimes,—6th ed.—p. 88; *State* v. *Broderick,* 59 Mo. 318; *State* v. *McCune,* 5 R. I. 60.) While there must be an actual severance of the property from the person to constitute robbery, still the crime is consummated if the thief retains possession of the property but a short time. It is no less robbery because ineffectual in its consequences. (24 Am. & Eng. Ency. of Law,— 2d ed.—p. 993, and cases cited.) Under these authorities the evidence justified the jury and court in finding the plaintiffs in error guilty of robbery as charged in the indictment.

The contention is also made that the testimony as to Boyd being present was not sufficient to justify his conviction. With this we cannot agree. The prosecuting witness swore positively that Boyd assisted Campbell in the struggle for the diamond pin. Officer Pierce swore positively that he saw Boyd and Campbell, together with two others, at the corner of Madison and Clark streets and saw them get on the car with Schenick. Two other officers also testified that they saw the four men near the place of the robbery shortly before the occurrence and identified Boyd as one of the four. Boyd and Campbell both testified that they were not to-

gether, but the former's testimony as to how he came to be in the crowd that was following officer Pierce with the prisoner, Campbell, after the arrest, was not consistent with itself or with the admitted facts in the case.

The further contention is made that the giving for the People of instructions 10, 11 and 14 was error. Instruction 14 appears to have been copied substantially, if not literally, from *Schnier* v. *People*, 23 Ill. 11, where it is stated (p. 26) that while the jury are made, under the statute, judges of the law as well as of the facts in criminal cases, it is the duty of the court, if requested by either party, to instruct them what the law is, but that it was the design of the statute that they should not be absolutely bound by such instruction; that "if they can say, upon their oaths, that they know the law better than the court does, they have the right to do so; but before assuming so solemn a responsibility they should be sure that they are not acting from caprice or prejudice, that they are not controlled by their will or their wishes, but from a deep and confident conviction that the court is wrong and that they are right. Before saying this upon their oaths, it is their duty to reflect whether, from their habits of thought, their study and experience, they are better qualified to judge of the law than the court. If, under all these circumstances, they are prepared to say that the court is wrong in its exposition of the law, the statute has given them that right." Plaintiffs in error contend that an instruction substantially like this was criticised by this court in *Juretich* v. *People*, 223 Ill. 484. The court in this last case said nothing to indicate that it was intended to overrule what was said in *Schnier* v. *People, supra.* The instruction here is fully supported not only by *Schnier* v. *People, supra,* but has been sanctioned repeatedly by this court. (*Fisher* v. *People*, 23 Ill. 218; *Falk* v. *People*, 42 id. 331; *Mullinix* v. *People*, 76 id. 211; *Davison* v. *People,* 90 id. 221.) We deem the correctness of this instruction settled.

Instruction No. 11, as to the credit to be given to the testimony of the defendants, is substantially, if not word for word, like an instruction approved by this court in *People* v. *Zajicek,* 233 Ill. 198.

The People's tenth instruction told the jury that they were the sole judges of the credibility of each witness, but the fact that a witness was a policeman or detective, or engaged in any other lawful business, did not render such witness incompetent to testify or furnish ground for arbitrarily rejecting such testimony; that the business of policeman is a lawful one, and his testimony should not be rejected through caprice or prejudice alone; that while taking into consideration his business and surroundings, the jury should at the same time consider such testimony with candor and fairness, and give it such weight as, under all the circumstances as shown by the evidence, they thought it fairly entitled to. It is contended in the brief for the State that the reason for asking this instruction was because counsel for plaintiffs in error, in arguing to the jury, criticised police officers and their testimony. As there is nothing in the record showing that fact, we think the instruction should have been refused. The calling of special attention to any particular testimony or particular witnesses is a practice not to be commended. (*Hronek* v. *People,* 134 Ill. 139; *Scott* v. *People,* 141 id. 195; *Martin* v. *People,* 54 id. 225.) We do not think, however, that this instruction was so prejudicial to the plaintiffs in error as to cause a reversal of the judgment. *People* v. *Casey,* 231 Ill. 261; *Roberts* v. *People,* 226 id. 296.

It is most earnestly and vigorously contended that the misconduct of the prosecuting attorney was such as to justify a reversal. While plaintiff in error Campbell was on the witness stand he was asked questions as to his attempting to settle the case. In answer Campbell denied that he had made any such attempt, and the State did not afterwards seek to contradict him in this regard. We cannot

see how this was injurious to Campbell. He admitted on the witness stand, in answer to questions by his own counsel, that he attempted to take the pin. The main thing he denied was that he succeeded in getting it entirely loose from the shirt front. The State, however, should not ask such questions unless it intended to follow them with proof of such facts.

Complaint is also made of certain questions asked of Campbell as to his being arrested prior to August 12. The prosecuting attorney asked him, "How long had you been here?"—meaning how long prior to the date of this robbery. Campbell replied, "Why, I was arrested the first day I was here." The subsequent questions as to the former arrest appear to have grown naturally out of this answer, in an effort to find when he came to Chicago. Campbell testified that he was seventeen years old, but admitted, on cross-examination, that he gave his age to the police as twenty-two. The jury evidently were not improperly influenced by these questions, for they gave him the benefit of the doubt and fixed his age so as to allow confinement in the reformatory rather than the penitentiary. Counsel for the State also asked plaintiff in error Boyd, on cross-examination, where he got the ring that he had hidden between his pants and drawers when he was arrested, and followed this by the question, "Did you have a ring hidden between your pants and drawers when you were arrested?" The court promptly sustained objections to both these questions as soon as they were asked. There was nothing in the evidence that tended to show that a ring was in any way connected with the crime charged in the indictment, and it was therefore improper for counsel to ask these questions, but only two questions were asked concerning the ring, and no attempt was made to proceed along that line of cross-examination after objections had been sustained. These questions would not justify a reversal of the cause. (*Schroeder* v. *People,* 196 Ill. 211.) In the hurried work of a trial, counsel might, by mistake,

ask improper questions, and even if done from an improper motive it would not necessarily reverse the case. No absolute rule can be laid down as to the conduct of the prosecuting attorney. The matter is one which must necessarily be entrusted very largely to the discretion of the presiding judge. *Gallagher* v. *People*, 211 Ill. 158, and cases cited.

The evidence supports the verdict, and as we find no substantial errors in the record the judgment of the criminal court will be affirmed.                     *Judgment affirmed.*