## Mary Hanley, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 17,485.

1. CARRIERS—*sudden start.* A verdict for plaintiff based on the sudden starting of a car from which she was alighting, is against the weight of the evidence where plaintiff and two boys testify that the car stopped and was started while she was alighting but such boys appear to have slight comprehension of the nature of an oath and their knowledge of the situation is vague and indefinite, and eight adults, six of whom appear to be disinterested, testify that plaintiff attempted to alight while the car was moving.

2. EVIDENCE—*how preponderance determined.* While in determining where the preponderance of the evidence lies the testimony of witnesses is to be weighed and the preponderance determined by the weight rather than by counting the witnesses and striking a numerical balance, yet the number of witnesses is not to be ignored as an element, and where the opportunity of several witnesses to observe the facts as to which they testify is equal and they stand on an equal plane as to credibility in other respects the element of number is controlling.

3. EVIDENCE—*when proper to permit evidence that cars often, stopped at place of accident.* Where plaintiff was injured while alighting from a north-bound car, which she alleges stopped on the south side of a street and started while she was alighting, though it regularly stopped on the north side thereof, it is proper to permit plaintiff to show that north-bound cars were stopped on the south side of such street opposite a park entrance during the season to accommodate persons who frequented such park.

4. EVIDENCE—*as to pain suffered by plaintiff in action for injuries.* In an action for personal injuries, it is competent for a witness to state that on the day following the injury plaintiff seemed to be suffering pain, but a statement that she complained of having pain is incompetent.

5. EVIDENCE—*when question in its general form properly excluded.* An objection to a question put to a medical expert in an action for personal injuries as to whether he had "testified in any other case this week than this one" should be sustained to such question in its general form.

6. EVIDENCE—*competency.* Objection should be sustained to questions to determine the competency of a witness which merely involve his religious training.

Appeal from the Superior Court of Cook county; the Hon. RICH-

ARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed May 21, 1913.

B. F. RICHOLSON and A. C. WILD, for appellant; LEONARD A. BUSBY, of counsel.

C. E. HECKLER and I. W. BAKER, for appellee; CHARLES W. LAMBORN, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee against appellant to recover damages for personal injuries, alleged to have been occasioned by the negligence of appellant, wherein a trial in the Superior Court resulted in a verdict and judgment against appellant for $1,500.

The declaration contains two counts. The first count charges that the car upon which appellant was a passenger was caused and permitted to jar, jerk and start forward from a stationary position, while appellee, in the exercise of due care for her own safety, was in the act of alighting therefrom. The second count charges that the car was caused or permitted to jar, jerk and start suddenly forward at a greatly accelerated rate of speed from a slowly moving position while appellee was in the act of alighting therefrom.

The evidence introduced on behalf of appellee tended to show a right of recovery under the first count of the declaration alone, and such evidence is relied upon by appellee to support an affirmance of the judgment in this court.

The main contention of appellant is that the verdict is contrary to the manifest weight of the evidence.

Appellee testified that shortly after nine o'clock on the night of June 13, 1909, she boarded a north-bound Halsted street car at 63rd street for the purpose of being carried to 52nd street near which street she resided; that when she entered the car the seats were occupied and she remained standing until the car

reached 59th street, where she secured a seat; that between 53rd and 52nd streets the conductor, who was on the rear platform, called out, "52nd street;" that the car was then running slowly, as there was another north-bound car ahead of the car in which she was riding; that she pressed the electric signal button and walked to the rear platform; that as she stood on the platform facing east the conductor was standing on the platform at her right and south of her; that when the car came to a stop on the south side of 52nd street, it remained stationary four or five seconds during which time she stepped from the plaform to the step and was in the act of stepping from the step to the street when the car suddenly started forward and she was thereby thrown down and injured.   On her direct examination appellee testified that while she was standing upon the platform and attempting to alight therefrom the conductor did not say anything to her, but on cross-examination she testified that when the car came to a stop she asked the conductor if she couldn't get off and he said she could.   She further testified that she frequently rode as a passenger on the north-bound Halsted street cars, and that while the regular stopping place for said cars was on the north side of 52nd street, said cars frequently stopped on the south side of said street to receive and discharge passengers.

The evidence discloses that at the time in question a place of amusement, known as Luna Park, was being operated on the south west corner of Halsted and 52nd streets and that the main entrance to said park was on the west side of Halsted street about seventy-five feet south of 52nd street; and it was claimed by appellee that the purpose of stopping cars on the south side of 52nd street was to accommodate the patrons of Luna Park.

George H. Gale, who was employed at the Park in the capacity of a musical megaphone operator, testified on behalf of appellee that at the time of the accident, he was standing on the outside of the sidewalk

on the west side of Halsted street near the main entrance to the park; that he saw a north-bound car stop at the north east corner of 52nd and Halsted streets and saw the car in which appellee was a passenger following it up closely; that the last named car stopped on the south edge of 52nd street so it would not block up that street; that when the car stopped he saw appellee and the conductor on the rear platform; that the car was started up just as appellee went to get off, and she fell off and the car went on across the street; that when she fell appellee was just stepping off the car; that he had no previous acquaintance with appellee.

Albert J. Connor, who was ten and one-half years of age at the time appellee was injured, testified that he was then standing on the east side of Halsted street looking at the sights at Luna Park; that he saw two cars, one on the north side of 52nd street and one on the south side of said street, and saw appellee on the platform of the rear car; that she was going to get off and just as soon as she was going to put her foot on the ground the car started and she fell on her face.

Joseph Pickett, who was about thirteen and one-half years of age at the time of the accident, testified that just as he was going up stairs to a chop suey place on the east side of Halsted street, a short distance south of 52nd street, he looked back and saw a car standing on the north east corner of said streets, and also saw the car on which appellee was riding which had been going slowly and which stopped south of 52nd street; that he saw appellee on the platform; that when the car was standing still appellee started to get off, and when she was just getting off, it started again and she fell right out forward on her face; that the car in which appellee was riding started forward as soon as the car in front of it started forward.

The testimony of the witness, Gale, discloses that he was voluble in his indulgence in exaggeration. In view of the fact that he was standing on the west side

of Halsted street when the car approached from the south, and that the doors on the west side of the platform were closed, his statement that at that hour of the night he saw appellee and the conductor standing on the platform and observed appellee as she stepped off the east side of the platform and fell upon the street, taxes our credulity.

The witnesses, Connor and Pickett, appear to have had but slight comprehension of the nature of an oath, and a careful examination of their testimony discloses that their purported knowledge of the situation was vague and indefinite, and suggests that their statements were prompted by an innocent desire to aid appellee.

Nine witnesses, including the conductor and the motorman, testified on behalf of appellant with reference to the operation and movements of the car and the conduct of appellee at the time she was injured.

Harry R. Kempster, Joseph Keller, and John Serbeck, adult passengers upon the car, who were apparently disinterested, testified that they were standing on the rear platform as the car approached 52nd street, and when appellee came onto the platform for the purpose of alighting from the car; that as the car approached the crossing, its speed slackened to about four or five miles an hour, and that while the car was running at that speed appellee attempted to alight from the car and fell upon the street; that they did not hear appellee say anything to the conductor before she attempted to alight, and that the conductor said nothing to her; that the car did not come to a stop until after appellee had fallen therefrom. The motorman, Roy W. Chezem, corroborated the last named witnesses as to the operation and movements of the car, and the conductor, Jones, further testified that after appellee fell off, he gave the emergency stop signal and while the car was slowing down he jumped off and went to appellee's assistance.

Mary McDowell testified that she, with her husband,

was standing on the east side of Halsted street south
of 52nd street, and saw the car coming along pretty
slowly and saw appellee as she dropped to the pave-
ment; that the car was going very slowly at the time
and that so far as she noticed the car had not made
any stop at or near 52nd street before appellee fell.

Wilhelmina Schraeder testified that, as she was
walking south on Halsted street, she stopped at the
corner of 52nd street; that she saw the car moving
slowly and saw appellee drop out of the car while the
car was moving; that she did not know whether the car
had stopped before she saw appellee fall.

Bennie Steffens, who was eleven and one-half years
of age at the time in question, testified that he was
then tending to a peanut stand on the west side of Hal-
sted street south of 52nd street; that he saw appellee
step off the car and fall down; that the car had not
made any stop before she fell and the car was then
slacking up for the stop on the north side of 52nd
street.

Michael Bohn testified that he was standing on the
east side of Halsted street about seventy-five feet
south of 52nd street; that just as the car came along in
front of him and while it was slowing down for the
crossing, he saw appellee step off from the rear end
of the car and fall upon the street; that the car had
not stopped there before appellee fell.

Excluding the testimony of the boy, Bennie Steffens,
whose situation as regards his opportunity to observe
the conduct of appellee was similar to that of the wit-
ness, Gale, there is the testimony of eight adult
witnesses, six of whom appear to be disinterested, in
contradiction of the facts relied upon by appellee as a
ground of recovery and supported by the testimony
of appellee and the two boys, Connor and Pickett.
While it is true that in determining where lies the pre-
ponderance of evidence, the testimony of witnesses is
to be weighed and the preponderance determined by
the weight rather than by merely counting the wit-

nesses and striking a numerical balance, the number of witnesses testifying to a certain state of facts is not to be ignored as an element in determining where lies the preponderance of the evidence. Where the opportunity of several witnesses to observe the facts as to which they testify is equal, and such witnesses stand on an equal plane as to their credibility in other respects, the element of numbers is, and properly so, one of controlling influence. A careful examination of the evidence of the several witnesses here involved compels us to the conclusion that upon the controverted issue of fact, whether or not appellee was injured while attempting to alight from the car while it was in motion, a clear preponderance supports the contention of appellant, and that the verdict of the jury is contrary to the manifest weight of such evidence.

While the verdict and judgment, if supported by the evidence, might not necessarily be required to be set aside upon a consideration and determination of the other errors assigned, we may properly consider and determine the same, in so far as they relate to the procedure at the trial, for the guidance of court and counsel upon a retrial of the case.

As tending to support the contention of appellee that north-bound cars on Halsted street frequently stopped at the south line of 52nd street for the purpose of receiving and discharging passengers at a point directly opposite the main entrance to Luna Park, appellee was permitted to show that a large number of people frequented that park during the season and that cars were stopped at that corner for the accommodation of persons going to or returning from said park. The situation in that regard, as it then existed, was proper to be disclosed to the jury for their consideration, as affecting the conduct of both parties at the place in question.

It was competent for the witness, Mary Joyce, to state that upon the day following her injury appellee seemed to be suffering pain, but the further answer of

the witness that appellee complained of having pain was incompetent, and would doubtless have been stricken, if appellant's motion to strike had been directed to such incompetent portion of the answer.

It is complained that counsel for appellee was improperly permitted to ask the witness, Gale, a leading question on his direct examination. The question to which our attention is directed was not leading, in view of the preceding testimony of the witness, but if it had been objectionable for that reason, the objection interposed by appellant was not sufficiently specific to save the point.

A witness called as a medical expert by appellant was asked on cross-examination whether he had "testified in any other case this week than this one," and was permitted over the objection of appellant, to answer that he had testified in one other case, but not for appellant. The objection should have been sustained to the question in its general form. *Chicago & E. I. R. Co. v. Schmitz,* 211 Ill. 446.

Tests, based upon religious belief or want of such belief, to determine the competency of a witness have been abolished (*Hronek v. People,* 134 Ill. 139), and appellant's objections to questions involving merely the religious training of the witness, Connor, should have been sustained.

Because the verdict of the jury is against the manifest weight of the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*