(No. 22515.—▇▇▇▇▇)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES CATUARA *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1934—Rehearing denied Dec. 13, 1934.*

BENEDICT J. SHORT, and ODE L. RANKIN, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, James Catuara and William Palermo, were convicted in the criminal court of Cook county of the statutory crime of procuring a dynamite bomb with the intent that it be used for unlawful injury to and destruction of property, and they bring the cause here for review.

The indictment consisted of forty counts. At the close of all the evidence the State *nolle prossed* thirty-two counts. The remaining eight counts charged procurement of dyna-

mite with intent to unlawfully use the same for the injury to and destruction of property. Numerous errors are assigned, which will hereinafter be discussed.

The act under which the indictment is laid provides as follows: "Any person * * * who shall make, manufacture, compound, buy or sell, or otherwise procure or dispose of, * * * any nitro-chlorate, or other explosive compound, with the intent to use the same, or that the same may be used for unlawful injury to or the unlawful destruction of life or property in any place whatsoever, shall be deemed guilty of felony, and upon conviction thereof, shall be punished by imprisonment for a term of not less than five years nor more than twenty-five years." (Cahill's Stat. 1933, chap. 38, par. 207, p. 1011.) In general parlance and as well by definitions by lexicographers the word "procure" means "to obtain," "to get."

The State's evidence on the trial was, that on April 18, 1933, at about ten o'clock in the evening, officers on duty in the city of Chicago were riding in a police car in the vicinity of Morgan and Lake streets, in that city. They noticed an automobile going slowly east on Lake street. The rear light was not burning. The officers changed their course and followed the car, which, after going a block or two, turned in the street and started back. The officers' car blocked the one driven by plaintiffs in error, and finding the right-hand door locked, the officers ordered the plaintiffs in error to get out of the car. Catuara was in the driver's seat and Palermo was sitting next to him, on the right side of the car. Palermo opened the door, and while getting out tossed a white package along the ground to the back of the car, using an underhand throw. One of the officers seeing the act of throwing the dynamite away called to the other officer, saying, "I think this is the pineapple." The package was picked up by the officers, one of whom asked Catuara what he was doing with the bomb. Catuara replied to the officer, "Johnson, can I talk

to you?" Plaintiffs in error were taken to the detective bureau. The State's evidence is, that before Catuara was placed in a cell he said to officer Johnson, "Let's talk business; cover it up and let's do business," and Johnson replied, "No, we are going to the cell room." Catuara then said, "There is a grand in sight." The package picked up by the officer proved to be a dynamite bomb consisting of five sticks of dynamite and two pieces of wood bound together with a rope. Near one end was inserted a fuse with a blasting cap. The evidence shows that the fuse would burn through to the dynamite in about one minute and fifty seconds.

Plaintiffs in error were searched at the detective bureau and there was taken from the person of Catuara certain documents which were introduced in evidence, one of which was a bill of sale to one Joseph Brigante of the car the plaintiffs in error were riding in. There were also a payment book of notes due on the car to the Universal Credit Company and a certified copy of the license application for the car, which showed the applicant to be Joseph Brigante. Brigante testified that he had bought the car on March 7 and had sold it to Catuara about a week and a half thereafter and turned over to him all papers referring to it. He stated that he did not at any time make out an application for a license for the car and that the application introduced in evidence was not in his handwriting.

The defense was that plaintiffs in error were in the neighborhood where they were apprehended for the purpose of meeting two girls with whom they had an engagement. Palermo denied that he threw anything under the car. He testified that the first he knew of the bomb was from the statements of the police concerning it. Catuara testified to the same. Both he and Palermo denied any conversation with the officer about attempting to settle the matters or giving any money to them. Catuara testified that he bought the automobile from Brigante on a thirty-

day try-out, with the privilege of returning it if he did not like it, and took out the license in Brigante's name with the latter's consent, so that if he turned the car back there would be no need to change the license. He also stated that his cousin signed the application. Palermo testified that he worked in a pastry shop as an assistant to a baker, and Catuara testified that he was a grocer.

Plaintiffs in error contend, first, that there is no evidence of procurement with the intent specified in the statute; that assuming they had possession of the bomb, (which they both deny,) such possession is not evidence of procurement of it, for the reason that procurement with intent is not the same as possession of dynamite with intent. Proof of possession is necessarily proof of procurement, for the reason that the former necessarily includes the latter. If one possess a thing he has procured it. The charge in the indictment is the procurement of the bomb with intent that it be used for unlawful injury to and unlawful destruction of property. It will be observed that the statute does not make possession of an explosive compound a crime. While proof of possession is proof of procurement, such proof does not show intent but intent must be shown by other evidence. The nature of the thing found in the possession of the accused, proof of concealment of it, expressions regarding his intent, his actions when apprehended with it in his possession, if there be an attempt on his part to conceal or dispose of the thing, all may constitute evidence of intent to unlawfully use it, and where the thing possessed is designed and used only for destruction, as dynamite, such proof, unexplained, may amount to sufficient proof of procurement with unlawful intent to destroy life or property. Where one is found in possession of explosives with intent to use them for an unlawful purpose the presumption arises that he procured them for such unlawful purpose. (*Hronek* v. *People,* 134 Ill. 139.) It was in that case said: "The fact that he procured the ex-

plosive is shown by his having it in his possession. The unlawful intent is manifested by the character of the substance itself, his concealment of it and his contemporaneous declarations of his intent." We are of the opinion that intent is sufficiently shown by the nature of the bomb and the acts of plaintiffs in error in attempting to dispose of it. The business of neither plaintiff in error is in any way related to the possession of dynamite.

Counsel for plaintiffs in error argue, however, that even though there be proof in the record to show procurement of the bomb with intent to use it for the destruction of property, as charged in the indictment, there is no proof that they procured it on April 18, 1933, nor at any other time; that it is incumbent upon the People to show such procurement with such intent at some time within the period of the Statute of Limitations against felonies—in other words, within three years—and where there is no such proof there is no proof of the commission of a crime. They argue that the allegation in the indictment of the date of procurement is material and must be proved on some date within the Statute of Limitations beyond a reasonable doubt. Such is the rule in this State. (*Kettles* v. *People,* 221 Ill. 221.) Counsel for the People argue that it is but a reasonable deduction to hold that, possession having been shown on the date alleged, the procurement of the bomb must have occurred within the statutory period or limitation prior thereto, for the reason that it would be unreasonable for the defendants to keep a bomb from a date more than the period of limitations prior to return of the indictment, and that ordinarily where such a dangerous substance is procured with unlawful intent it will be used for an unlawful purpose soon thereafter. There is in the record no direct evidence concerning the date on which plaintiff in error procured or obtained the bomb. There is in the record, however, the fact that neither of the accused is engaged in a business or occupation calling for

the use of explosives, and it is but fair to presume, therefore, that neither would have occasion to store or keep such bombs on hand in connection with his business. A bomb is a dangerous instrument, with great power for destruction, which may be exploded in different ways. Common prudence would forbid a grocer or baker storing or keeping it in his possession for any considerable period of time. It is a matter of common knowledge that dynamite bombs, because of their highly dangerous character, are not ordinarily kept in or about living quarters or premises. It may therefore be said that it is so highly improbable that possession of a bomb would be retained for more than three years by the accused, as to amount, under the evidence in this record, to proof that it was, in fact, procured within that period next prior to the return of the indictment. There is no countervailing proof, and it may be said that the record justifies the conclusion beyond a reasonable doubt that the bomb was procured within the statutory period.

Instruction 13 is objected to by plaintiffs in error. It told the jury that in order to warrant a conviction it was not necessary for the State to prove the time, place or manner of procuring the dynamite, if any such was procured, but that it was sufficient if they believed, beyond a reasonable doubt, that such dynamite was possessed by defendants at the time and place as charged in the indictment, with intent to destroy property. For reasons stated this instruction was misleading. As the record justifies the conclusion that time was sufficiently shown, the giving of this instruction does not require a reversal of this judgment.

Instruction 10 is also complained of. By it the jury were told that if they believed from the evidence, beyond a reasonable doubt, that the defendants possessed dynamite or other explosive compounds in manner and form as charged in the indictment, such evidence of possession is, in law, evidence of procurement. For reasons given in this opinion this instruction was not erroneous.

It is also argued that the documentary evidence pertaining to the ownership of the automobile in which plaintiffs in error were riding, and the application for a license therefor, was incompetent and prejudicial. The People, on the other hand, argue that this evidence was competent as showing criminal intent. The unlawful intent is by the statute made an element of the crime. To show this, the prosecution offered evidence of the nature of the bomb, the actions of plaintiffs in error, when apprehended, in throwing the bomb away and in attempting to influence the officers, and the act of driving a car with license plates in the name of another person. It is but reasonable to say that if plaintiffs in error are guilty of the crime charged in the indictment they might well have purposed using a car having a license in the name of another, to avoid detection in case the license plates on the car in which they were riding should be observed. The issue of intent allows a wider range of evidence in support thereof than is allowed in the support of other issues. This is necessarily so from the nature of a secret design or a purpose, and where such secret design or purpose is an element of the crime charged, unless a wider latitude in proof is allowed it would frequently be true that there would be no means to reach and disclose that intent or purpose. (8 R. C. L. 182, and cases cited.) We are of the opinion that this evidence was properly received as bearing on the question of intent, and the fact that it disclosed the violation of the Motor Vehicle act does not render it incompetent. *People* v. *Swift,* 319 Ill. 359; *People* v. *Spaulding,* 309 id. 292.

Plaintiffs in error also say that it was error to refuse their motion to require the State to elect on which of the forty counts it would proceed to trial. As we have seen, at the close of all the evidence the State *nolle prossed* all counts except those charging procurement. The other counts charged the manufacture, sale, buying and disposing of the bomb. The remaining counts were all directed

to the same transaction and related to the same subject matter. They were all violations of the same section of the statute. These counts were therefore not improperly joined, and it was not error to refuse to require an election on which counts the State would proceed. *People* v. *Perrello,* 350 Ill. 231; *People* v. *McElvain,* 341 id. 224; *People* v. *Weil,* 243 id. 208.

It is also argued that the evidence does not sustain the verdict. A resumé of the evidence has hereinbefore been set out, and we are of the opinion that this contention can not be sustained.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*