THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY GARDT, Plaintiff in Error.

*Opinion filed April 19, 1913.*

1. LOCAL OPTION—*what constitutes a shift or device to evade the statute.* The conducting of an alleged social club by the proprietor of a cigar store in a back room fitted with a bar, lockers, tables and chairs, where members and their invited friends might come to drink liquor claimed to have been ordered by the members and kept in their own lockers, will be regarded as a mere shift or device to evade the statute, where the evidence shows that the only requisite for membership in the club was the payment of money for club room and locker keys, and that members and non-members had obtained liquor which was kept in stock by the proprietor.

2. CRIMINAL LAW—*when refusal of an instruction is not prejudicial.* The refusal of an instruction stating that it is not a violation of the provision of the Local Option statute making it an offense to exchange intoxicating liquor in anti-saloon territory for a person to exchange a bottle of his own liquor for another bottle of his own liquor is not prejudicial, where the accused was not convicted upon any count of the information which charged him with unlawful exchange of intoxicating liquor.

3. SAME—*when instruction as to evidence of private detective is incorrect.* An instruction in a criminal case stating that "the evidence of a private detective upon questions of disputed fact arising in criminal cases should always be received with a large degree of caution," etc., does not state a correct proposition of law and it is not error to refuse it.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the County Court of Knox county; the Hon. R. CLIFF RICE, Judge, presiding.

FORREST F. COOKE, for plaintiff in error.

W. H. STEAD, Attorney General, A. J. BOUTELLE, State's Attorney, and THOMAS E. GILL, for the People.

Per CURIAM: Upon a trial before a jury in the county court of Knox county plaintiff in error, Henry Gardt, was found guilty under the first count of an information charg-

ing him with the unlawful sale of intoxicating liquor in the city of Galesburg while that city was anti-saloon territory, in violation of the statutes of this State. It was further charged in each count of the information that plaintiff in error had theretofore been duly convicted of selling intoxicating liquor in anti-saloon territory. After overruling a motion for a new trial the court rendered judgment upon the verdict and sentenced plaintiff in error to confinement in the county jail of Knox county for thirty days and to pay a fine of $200 and costs. This judgment has been affirmed by the Appellate Court for the Second District, and plaintiff in error has by writ of error brought the record here for further review.

Section 12 of the act of May 16, 1907, creating anti-saloon territory, (Laws of 1907, p. 297,) provides that "whoever shall by himself or another, either as principal, clerk or servant, directly or indirectly, sell, barter or exchange any intoxicating liquor in any quantity whatever within the limits of any political subdivision or district in this State, while the same is anti-saloon territory, shall be fined. * * * If any person shall be convicted of violating any provision of this section and shall subsequently violate any provision of this section he shall upon conviction thereof, be fined not less than fifty dollars ($50) nor more than two hundred dollars ($200) and imprisoned in the county jail for not less than ten (10) days, nor more than thirty (30) days." Section 13 of the same act provides that "the giving away or delivery of any intoxicating liquor for the purpose of evading any provision of this act, or the taking of orders or the making of agreements, at or within any political subdivision or district while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor, or other shift or device to evade any provision of this act, shall be held to be an unlawful selling."

The evidence shows without contradiction, and plaintiff in error here concedes, that the city of Galesburg was at the

time of the commission of the alleged offense anti-saloon territory, and that he had been previously convicted of selling intoxicating liquor in anti-saloon territory in violation of said act. The only grounds urged for reversal are, the refusal of the court to grant a new trial on the ground that the evidence failed to show that plaintiff in error sold intoxicating liquor in the city of Galesburg within eighteen months from the filing of the information, and the refusal to give certain instructions offered by plaintiff in error.

Before the city of Galesburg became anti-saloon territory plaintiff in error was engaged in the liquor business in that city. Since that time he has, together with his son, been conducting a cigar store in Galesburg. On July 15, 1909, after the city had become anti-saloon territory and after he had been convicted of selling liquor in the city of Galesburg in violation of the statute, plaintiff in error, together with J. W. Coyle and J. H. Boyd, obtained from the Secretary of State a charter incorporating the Heidelburg Club, a corporation not for pecuniary profit. The object of this club, as stated in the application for a charter, was the maintenance of club rooms for social purposes. The management of the club was vested in three directors, who were to be elected annually. The club occupied a single room in the rear of plaintiff in error's cigar store, the two rooms being separated by a partition. The furnishings of the club room consisted of a bar, numerous lockers, tables and chairs. The only person connected with the club testifying in this case was plaintiff in error, who detailed the manner in which the club was conducted. From his testimony it appears that in order to become a member of the club it was only necessary to make a formal application for membership, pay a dollar for a key to the door of the club room and a dollar for a key to a locker, in which liquor was to be kept by the member, and pay for whatever liquor was ordered for such member by or through the club; that in July, 1911, the officers of the club consisted of a treas-

urer, secretary and steward, plaintiff in error being treasurer, Coyle secretary and a man named Dryden steward; that the duties of the steward were to receive applications for membership, collect the $2 charged for keys, order liquor for members, see that no person except members and their invited friends entered the club room, and, in general, to attend to and take care of the club room; that for these services the steward received $15 per week; that the steward turned over the money received by him to plaintiff in error, who, as treasurer, paid all bills of the club; that the management of the club was vested in three directors, who employed all the help, and that he was one of the directors. The names of the other directors were not given and none of them testified in this case, nor does it appear from the testimony of plaintiff in error that the other directors took any active part in the management of the club. The building in which the club room was located, as well as the fixtures therein, belonged to the Pabst Brewing Company. Frohlich & Nerdlinger, agents for the brewing company, and who were in 1911 engaged in the liquor business at Bushnell, Illinois, were the lessees of the brewing company, and they sub-let the front part of the building to plaintiff in error for use as a cigar store and the rear of the building to the Heidelburg Club for use as a club room. Plaintiff in error testified that as treasurer of the club he paid the rent for the club room, amounting to $35 per month, and that the other expenses of the club paid by him as treasurer aggregated over $150 per month. The only revenues of the club mentioned by plaintiff in error were derived from the sales of keys to applicants for membership and from lunches served to members and their friends in the club room. Plaintiff in error further testified that the club sold no liquor of any kind, but furnished lockers in which members who desired to keep liquor at the club could have a safe place to store the same; that the lockers were numbered, each having a different number; that the club

also furnished an ice box for the use of its members, and that this ice box was divided into numbered compartments, the numbers corresponding with those on the lockers; that the club also furnished order blanks for use by members in ordering liquor to be sent to the club for them; that the liquor was not ordered by the club but by the member desiring the liquor; that such member would fill out one of the order blanks for the liquor which he desired, give it to the steward, together with the money to pay for the same, and the steward would send this order, together with the money, to the wholesale house to which the order was addressed; that the liquor was shipped to the Heidelburg Club, and the shipping tag would contain the number of the locker assigned to the member to whom the liquor belonged; that upon its arrival the porter took charge of it and placed it in the member's locker, and in case it was a shipment of beer, the porter would take a few bottles out of the case and place them in the compartment of the ice box which corresponded with the number on the member's locker, and that when such member desired a bottle of cold beer he would exchange a bottle obtained from his locker for a bottle in his compartment of the ice box. Plaintiff in error further testified that no liquor of any kind was kept in the Heidelburg Club that was not the property of some member of the club; that he never sold any liquor in the club room and never knew of any being sold there; that he was not interested in the wholesale firms from whom the liquors were ordered, and that there was no rebate paid by those firms to him or to the club.

The principal witness for the People was one Ben Morgan, a resident of the city of Chicago, who was sent to Galesburg by a law enforcement society having its headquarters in Chicago to obtain evidence of the illegal sales of liquor in Galesburg. He testified that he first met Gardt about 1:30 o'clock in the afternoon of July 6, 1911; that Gardt was then in his cigar store; that he asked Gardt if

he was the manager of the Heidelburg Club, and Gardt replied that he was; that he then arranged with Gardt to join the club, Gardt explaining to him the plan of the club; that Gardt produced an order blank, and after being informed that he (Morgan) wanted export beer, filled in the word "export" on the blank and had Morgan sign his name thereto; that the order was not then addressed to any person, firm or corporation; that he then gave Gardt $5, it being explained by the latter that $2 of this amount was for keys to obtain access to the club room and to a private locker in which the beer was to be kept and the remaining $3 was to pay for the case of beer; that Gardt took the order blank which Morgan had signed and that Morgan did not see it again; that Gardt told him that the beer would be ready when he came in again and asked him if he wanted a bottle then; that upon being informed that he did, Gardt took him into the club room and gave him a bottle of beer, telling him that the beer which he drank then would be taken out of the case which Morgan had ordered, when it came; that he sat down at a table and drank the beer; that he returned to the club room about four o'clock the same afternoon and found thirty-five bottles of beer in the locker which had been assigned to him, one bottle having presumably been taken from the case on account of the one which he had drank earlier in the afternoon; that he took a bottle of beer from his locker to the man behind the bar and exchanged it for a bottle of beer of the same kind which had been on ice; that the bar-tender removed the cap from the bottle and he (Morgan) took it to a table and drank the contents; that thereafter on various occasions he exchanged beer taken from his locker for cold beer in the same manner in which the first exchange was made; that on three of these occasions he was accompanied by A. G. Avery, who was also in the employ of the law enforcement society. Avery did not join the club but was admitted to the club room as a friend or guest of Morgan, who on each occasion

·treated him to beer obtained by having the bar-tender exchange cold bottles of beer for those taken from his locker by Morgan.

Both Morgan and Avery testified that when they were in the club room on July 10, 1911, three men came in and without going to a locker went directly to the bar; that they said something to the bar-tender, who turned, picked up a pencil and made some marks on a piece of paper, and handed the men three bottles of beer from behind the bar, which they took to a table and drank. They further testified that on July 13, 1911, while they were in the club room, a man whose name they did not ascertain entered and went directly to the bar, wrote something on a slip of paper, gave it, together with some money, to the bar-tender, and was thereupon handed a quart bottle of whisky from behind the bar, from which he took several drinks.

A witness by the name of Columbus Castle, who resided in Rock Island, also testified on behalf of the People that he never joined the Heidelburg Club but had been in the club room several times during the summer or fall of 1911 and had obtained liquor there on each occasion; that he always went in with persons who claimed to be members of the club; that he saw Gardt there; that on one occasion he went in with two or three men who claimed to be members; that he met these men on the street and one of them asked him if he wanted a drink; that he went to the club room· with them and sat down at a table; that the man who had invited him into the club room went over to the bar and came back in a minute and requested the witness to give him some money; that whisky was brought to the table by a colored porter, which the witness and his companions drank; that the witness laid $5 on the table, from which the porter took out $1.65 and gave the witness the balance in change. Upon cross-examination this witness admitted that he had been tried and convicted in the county court of Knox county of selling whisky in violation of law and had

been sentenced to the county jail and to pay a fine, and that the fine was still unpaid.

Plaintiff in error, while admitting that he received the application for membership from Morgan, together with the order for a case of beer, and received $5 from him, testified that he did this at the request of Morgan and solely for Morgan's accommodation; that it was not a part of his duties, as an officer of the club, to receive either applications for membership or orders for liquor, those duties being imposed on the steward, and that he turned the application and order, together with the money received from Morgan, over to the steward and had nothing further to do with the transaction; that he did not tell Morgan that he was the manager of the club and did not give him any beer at that or at any other time; that Morgan did not get any beer in the club room on the afternoon of the day on which he ordered the case of beer; that the beer was ordered from Frohlich & Nerdlinger, of Bushnell, and that it could not possibly have arrived in Galesburg the same afternoon on which Morgan signed the order. He further denied all knowledge of any sale of liquor in the club room to Columbus Castle or to any other person.

The order signed by Morgan was offered in evidence by plaintiff in error. It was an order for one case of export beer, dated July 6, 1911, was addressed to Frohlich & Nerdlinger, at Bushnell, and recited the inclosure of $3. Sidney Nerdlinger, of the firm of Frohlich & Nerdlinger, identified the order as one which he had found among the files which his firm kept at Bushnell.

The above is, in substance, the evidence upon which the jury found plaintiff in error guilty of selling intoxicating liquor in violation of the act of May 16, 1907, creating anti-saloon territory, and in our judgment it was sufficient to warrant the jury in finding that the Heidelburg Club was a mere shift or device adopted by plaintiff in error to evade

the provisions of the statute prohibiting the sale of intoxicating liquor in anti-saloon territory. So far as this record shows, it was not a *bona fide* club organized for the purpose, as stated in the application for a charter, of maintaining club rooms for social purposes. The record discloses the name of no person exercising any control over the management of the club except plaintiff in error and a steward, who, as an employee, was paid a salary of $15 per week, and who performed substantially the same duties as are usually performed by a bar-tender in an ordinary dram-shop. The evidence of plaintiff in error concerning the method of conducting the club and the manner in which members obtained the supplies of liquor which were consumed by them is not corroborated by any of the other alleged officers or directors of the club or by any of the members or other persons interested in the club. So far as the evidence shows, the club had no constitution or by-laws and held no stated meetings, and a formal application, which does not seem to have required the approval of any one connected with the club except plaintiff in error or the steward, and the payment of $2 for keys to the door of the club room and to a locker, were all that was required to constitute an applicant a member of the club. If the club had a president, plaintiff in error made no reference to such fact in naming the officers of the club. Neither did he enumerate any duties which Coyle, as secretary, performed. The payment of membership dues does not seem to have been one of the requirements of this club, and it is hardly probable that the revenues derived from the sources mentioned by plaintiff in error could have been sufficient to meet the expenses of the club, which amounted to over $185 per month, his testimony being that the membership had at no time exceeded 170. Neither can plaintiff in error's testimony relating to the method by which members obtained liquor in the club room, nor his statement that no liquor

was sold in the club room, be reconciled with the testimony of the witnesses for the People. If the testimony of Morgan is to be taken as true, the case of beer ordered by him, instead of being shipped from Bushnell, was in the city of Galesburg at the time he signed the order, as it would have been impossible, as plaintiff in error admitted in his testimony, to have transmitted this order to Bushnell and to have received the case of beer in Galesburg the same afternoon. Neither can his testimony that no liquor was kept at the Heidelburg Club except such as belonged to individual members of the club be reconciled with the testimony of Morgan and Avery that persons obtained beer and whisky from the bar-tender (or, as he was termed by plaintiff in error, the steward,) without the formality of exchanging that taken from a locker for that kept behind the bar, nor with the testimony of Castle that he paid the porter for a bottle of whisky which he and his companions obtained and drank in the club room. The jury were justified in believing, from the evidence, that plaintiff in error, under the pretense that the Heidelburg Club was maintaining a club room in the rear of his cigar store, was, in fact, engaged in selling intoxicating liquor in that room in violation of the statutes of this State. The trial court did not err in refusing to grant a new trial on the ground that the verdict was contrary to the evidence.

The tenth and eleventh instructions offered by plaintiff in error were properly refused because both assumed as a fact that Frohlich & Nerdlinger, wholesale liquor dealers at Bushnell, sold the case of beer to Morgan which Morgan testified he obtained at the Heidelburg Club room on July 6, 1911, and that the only question for the jury to decide was whether plaintiff in error in this transaction was acting as the agent for Morgan or for the wholesale liquor firm. As hereinbefore pointed out, if Morgan's testimony to the effect that he found the beer in his locker within two or three hours after he signed the order is true, then Froh-

lich & Nerdlinger did not sell that beer to Morgan, and the jury had the right to believe from this circumstance, together with the other circumstances appearing from the evidence, that the real seller of the case of beer to Morgan was plaintiff in error. For this reason it would have been error for the court to have given either the tenth or eleventh instruction offered by plaintiff in error.

Complaint is made of the refusal of the seventh instruction, which would have advised the jury that when a person exchanges a bottle of his own liquor for another bottle of his own liquor it is not a violation of the statute making it an offense to exchange intoxicating liquor. Some of the counts of the information charged plaintiff in error with the unlawful exchange of intoxicating liquor. The jury did not find him guilty under any of these counts, and the error, if any, in refusing this instruction was therefore not prejudicial.

It is finally urged that the fifth instruction offered by plaintiff in error should have been given. This instruction would have advised the jury that "the evidence of a private detective upon questions of disputed fact arising in criminal cases should always be received with a large degree of caution," etc., being the same instruction set out in *Needham* v. *People,* 98 Ill. 275, but which was not there either discussed or approved. In the subsequent case of *Hronek* v. *People,* 134 Ill. 139, we held that such an instruction does not contain a correct proposition of law and that it is not error to refuse it. For the reasons given in the case last mentioned the court did not err in refusing this instruction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*