The People of the State of Illinois, Defendant in Error, v. William McCanney, Plaintiff in Error.

Gen. No. 6,331.

1.    Intoxicating liquors, § 127*—*when refusal of court to require bill of particulars is not error.*    On a prosecution for selling intoxicating liquors in anti-saloon territory, the refusal of the court to require a bill of particulars as to the kinds and brands of such liquors alleged to have been sold, by whom sold, whether by principal or agent, and further describing the premises where they were sold, *held* not erroneous.

2.    Indictment and information, § 45*—*when State required to furnish bill of particulars.*    The question whether the State should be required to furnish a bill of particulars and the character of such bill, in a criminal prosecution, *held* to rest in the sound legal discretion of the trial court.

3.    Criminal law, § 495*—*when decision of court in refusing to require bill of particulars not disturbed.*    Refusal of a trial court to require a bill of particulars in a criminal prosecution will not be disturbed unless it appears the defendant could not properly

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

prepare his defense without such bill or was injured by the failure to furnish it.

4. CONTINUANCE, § 71*—*when motion of defendant for in criminal case properly denied.* Where the defendant in a criminal prosecution for selling intoxicating liquors in anti-saloon territory did not ask for a bill of particulars until the time of trial and a month or more after he had been in court, *held* that his motion for a continuance to allow him opportunity to see and investigate the witnesses whose names were then furnished him by such bill and who lived in other cities was properly denied.

5. INTOXICATING LIQUORS—*who are legal voters at election.* Women are legal voters at an election under the act providing for anti-saloon territory.

6. PLEADING, § 432*—*what is office of a videlicet.* The office of a *videlicet* is to indicate that the pleader does not undertake to prove the precise circumstances alleged.

7. PLEADING, § 432*—*when rule as to videlicet inapplicable.* The rule that a *videlicet* indicates the pleader does not undertake to prove the precise circumstances so alleged does not apply to a *videlicet* which is material to the charge.

8. INTOXICATING LIQUORS, § 117*—*when date of sale of may be alleged under a videlicet.* In a prosecution for selling intoxicating liquors in anti-saloon territory, the date of a sale is not material, provided it was after the date the territory became anti-saloon and before the date of filing the information, and may be alleged under a *videlicet.*

9. WITNESSES, § 267*—*what weight should be given to testimony of a detective.* The testimony of a detective is to be treated like that of any other witness, and his interest, if any, in securing compensation from and success for his employer is to be considered the same as the interest of any other witness, and the jury are judges of whether he shall be believed.

10. INTOXICATING LIQUORS, § 150*—*when proof of intoxicating quality unnecessary.* Proof that the defendant sold spirituous, vinous or malt liquors is sufficient to sustain a conviction under the anti-saloon law without proving their intoxicating quality.

11. INTOXICATING LIQUORS, § 150*—*when proof of intoxicating quality necessary.* To sustain a conviction under the anti-saloon law for selling liquors not named in the law there must be proof of their intoxicating quality.

12. INTOXICATING LIQUORS—*what is question involved in prosecution for sale of malt liquors.* If a statute forbids the sale of malt liquors, it is only necessary in a prosecution thereunder to determine whether the liquors sold were malt.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

13. INTOXICATING LIQUORS, § 129*—*what judicial notice taken of.* Courts take judicial notice in a criminal case that whisky is a spirituous liquor.

14. INTOXICATING LIQUORS, § 144*—*when witnesses competent to testify as to quality of intoxicating liquor.* Certain witnesses *held* competent to testify whether certain liquors drunk by them were intoxicating liquors or malt liquors or whisky, where their testimony showed they could tell the character and quality of what they drank by drinking it.

15. INTOXICATING LIQUORS, § 145*—*when intoxicating quality of is question for jury.* Where the evidence was conflicting in a criminal case as to whether certain liquors sold by defendants and drunk by a certain witness were intoxicating or malt or whisky, *held* that the question was for the jury.

16. INTOXICATING LIQUORS, § 131*—*when evidence of lack of knowledge of intoxicating quality by seller is incompetent.* In a prosecution for selling intoxicating liquors in anti-saloon territory, evidence tending to show the defendant did not know the liquors sold by him were intoxicating, *held* not competent, as in cases of this character the defendant's intention is immaterial.

17. INTOXICATING LIQUORS, § 112*—*when former prosecution no defense.* A conviction for violation of a city ordinance as to selling intoxicating liquors, *held* to be no defense to a prosecution for violation of the anti-saloon law.

18. CRIMINAL LAW, § 452*—*what must appear in bill of exceptions.* In the absence of an order of court appearing in the record of the court that the jury in a case were to be kept together during trial, *held* that fact could only be shown, if at all on review, by the certificate of the court in the bill of exceptions.

19. CRIMINAL LAW, § 444*—*what must appear in bill of exceptions.* What was done by the court in a criminal case must be shown by the bill of exceptions containing a statement by the trial judge to that effect, and cannot be shown by an affidavit, but such affidavit must be disregarded.

20. CRIMINAL LAW, § 109*—*what is nature of offense of selling liquor in anti-saloon territory.* Violation of the statute relating to selling intoxicating liquor in anti-saloon territory is a misdemeanor merely.

21. CRIMINAL LAW, § 321*—*when jury may separate.* In misdemeanors it is not error for the jury to separate.

22. INTOXICATING LIQUORS, § 150*—*when evidence sufficient to sustain conviction for illegal sale.* In a prosecution for selling intoxicating liquors in anti-saloon territory, evidence *held* to make a case under the twenty-four counts of the information.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

23. INTOXICATING LIQUORS, § 161*—*when judgment excessive for illegal sale in anti-saloon territory.* Fines of $75 on each of twenty-two counts and $100 on each of two counts of an information for violation of the statute relating to selling intoxicating liquors in anti-saloon territory, *held,* to be excessive, where the information was filed soon after that law went into force in that territory and there was no direct proof of any sales to any residents of the territory or other than to two detectives resident elsewhere.

24. INTOXICATING LIQUORS, § 161*—*when fines reduced and judgment modified.* Where the fines assessed for violations of the statute for selling intoxicating liquors in anti-saloon territory were excessive, *held* that such fines should be reduced and judgment modified accordingly.

Error to the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the October term, 1916. Modified and affirmed. Opinion filed February 10, 1917. Rehearing denied April 12, 1917.

P. L. JORGENSON, for plaintiff in error.

JAMES G. WELCH, JOHN W. WELCH, RALPH J. DADY and E. M. RUNYARD, for defendant in error; W. F. WEISS, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On June 19, 1916, the State's Attorney of Lake county filed an information in the County Court against William McCanney, charging him with the unlawful sale of intoxicating liquor in the Town of Waukegan in said county, while it was anti-saloon territory. The information contained forty-one counts. He was tried by jury and found guilty under each. Afterwards, the State dismissed seventeen of said counts and under the other counts he was fined an aggregate of $1,850, was sentenced to imprisonment in the county jail for fifty days in all, and it was ordered that the place which he kept should be abated as a nuisance until he gave the bond required by statute,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and he afterwards gave such a bond and it was approved. At about the same time five other informations were filed in the same court, containing like charges against five other defendants and there were trials and convictions, and those cases are here for review, under general numbers 6332, 204 Ill. App. 124; 6333, 6334, 6335 and 6336, *post,* pp. 104, 105, 106 and 107. In each case the last count charged the keeping of a nuisance and sought its abatement, and in each case the State, by leave of court, filed an amended last count to correct the description of the premises sought to be abated. The same counsel appear in each case and the main contentions of each brief are the same, there being in each brief a few pages devoted specially to that particular case. Most of the contentions of the respective plaintiffs in error will be disposed of in this opinion.

In each case the defendant applied for a bill of particulars. The State complied in part with the application by furnishing the street addresses and places of residence of the witnesses whom the people would call, except those living in Waukegan, who would be called to prove that it became anti-saloon territory. The court, however, refused to require the State to set forth in a bill of particulars the kinds and brands of intoxicating liquor alleged to have been sold by the defendant, and to state by whom the liquor was sold, and whether the party selling was principal or agent, and to further describe the place where the liquor was sold. In each case the defendant claims that this refusal was reversible error, and relies largely upon what we said and the authorities we cited in *Gilmore v. People,* 87 Ill. App. 128. That was a conspiracy to obtain money by false pretenses and by the confidence game. In support of the application it was shown that the alleged conspiracy as to the other defendants had proceeded for some thirty days and many of the acts relied upon to show guilt had been

performed before Gilmore had any connection with the matter, or had ever even known or seen any of the parties to the transaction, and he became acquainted with the matter only nine days before the completion of the alleged conspiracy. The language used is to be considered in connection with those facts. Here, each defendant knew better than the State possibly could what liquids he sold at his place of business and what clerks or assistance he employed, and he needed no information from the State on those subjects, and the back of the indictment gave him the names of those to whom the State would claim sales had been made, and the State then furnished to defendant the addresses of those witnesses. Since the *Gilmore* case, *supra,* was decided, numerous later cases have somewhat modified the rule we there laid down, as we held in *People v. Brown,* 150 Ill. App. 365; *People v. Walker,* 154 Ill. App. 3; *People v. Maas,* 154 Ill. App. 11, all of which were prosecutions for the illegal sale of liquor. Since the cases which we there cited, it has been held in *People v. Smith,* 239 Ill. 91; *People v. Nall,* 242 Ill. 284; *People v. Poindexter,* 243 Ill. 68; and *People v. Gray,* 251 Ill. 431, that the question whether the State should be required to furnish a bill of particulars, and the character of such bill, rests in the sound legal discretion of the trial court, and that its refusal will not be error, unless it is made to appear that the defendant could not properly prepare his defense without such a bill or that he was injured by the failure to furnish it. We are of opinion that the court did not err in this case on that subject.

In the present case, after information was furnished in answer to the request for a bill of particulars, defendant moved for a continuance because he had not had an opportunity to see and investigate the witnesses for the People, whose places of residence had just been furnished him and who lived in Chicago and Bloomington. Defendant did not make this applica-

tion for a bill of particulars until the day the case was called for trial. He had been in court for a month or more and could not delay the trial by waiting that long before asking for this information.

In one or more of the cases, during the impanelment of the jury, defendant's attorney asserted that jurors were being called who had worked for the success of the proposition to make that anti-saloon territory at the recent election. He did not offer any proof of this statement, and, if the examination of the jurors showed it, he did not incorporate such showing in his abstract. In one or two of the other cases other rulings in the impanelment of the jury are complained of. The abstracts do not show that any defendant exhausted his peremptory challenges or had an unfair juror put upon him or was injured by the rulings of the court in impaneling the jury.

Although defendants concede in their briefs that the City of Waukegan is located in the Town of Waukegan and that it became anti-saloon territory on May 4, 1916, yet they also contend that the court erred in not requiring the State, in introducing the certificate of the clerk showing the election and the result thereof, to show separately the vote of the women and the vote of the men on that proposition, and in one of the cases the defendants proved the number of male voters and the number of female voters who voted for and against said proposition, and thereby showed that it was carried only by the vote of the women; and it seems to be contended that the women were not competent to vote on that subject and therefore the City of Waukegan was not in anti-saloon territory. The act providing for anti-saloon territory requires the proposition to be submitted to the legal voters of the political subdivision to be affected thereby. The Act of June 26, 1913, granting to women the right to vote in certain cases, authorizes them to vote upon proposi-

tions submitted to a vote of the electors of cities, villages and towns and other political divisions of the State. In *Scown v. Czarnecki*, 264 Ill. 305, it was held that said act is constitutional, so far as it relates to propositions submitted at a referendum election, which are not provided for in the Constitution, but only in the statute. The proposition to make a municipality anti-saloon territory is not provided for in the Constitution but only in the statute, and therefore women are legal voters at such an election.

In some of these cases there was a variance between the dates alleged in the counts of the information and the dates when sales were proved, and it is alleged that such variance is fatal. All the dates of alleged illegal sales stated in the information were laid under a *videlicet*. The office of the *videlicet* is to indicate that the pleader does not undertake to prove the precise circumstances alleged. 2 Bouvier's Law Dictionary, title *"Videlicet"; Rose v. Mutual Life Ins. Co.*, 144 Ill. App. 434. This rule does not apply if the matter stated under a *videlicet* is material to the charge. Here, the date of the sale was not material to the charge, provided it was after the city became anti-saloon territory and before the information was filed. There was therefore no error in that respect.

The evidence of illegal sales of intoxicating liquor introduced by the State was the testimony of two men who called themselves "investigators." They were in the employ of an organization to enforce the liquor laws of the State at a certain price per day and their expenses. They were sent to Waukegan and placed themselves under the direction of the State's Attorney. They were brothers. They rented a room in which to live, and then proceeded under the direction of the State's Attorney to visit frequently various places in the city where soft drinks were claimed to be sold by men who had kept saloons at those respective

places before the city became anti-saloon territory. One of these investigators engaged in some kind of work. They called for and obtained various kinds of drinks and drank them, and played cards and gambled, and came to the various places from time to time. One of them carried a bulb syringe in his pocket and one or more empty bottles. One of them would manage to lower his glass or bottle below the table and fill a syringe from it, or he would go to the toilet carrying a bottle of liquor he had purchased and there with his syringe take out a part of it and place it in an empty bottle in his pocket. They would then return to their room, seal up this bottle and mark it so as to distinguish it from other bottles, and one of them would set down in a book they kept, memoranda showing what liquor they had called for at each place, and the character of what they had obtained. The other one saw the entries that were made. Afterwards they delivered these samples to a chemist at the Wesleyan University at Bloomington who analyzed the contents of the several bottles and testified what kind of liquor they were and what proportion of alcohol they contained. Before each trial these investigators or detectives refreshed their recollection from the minutes they had made in the book they kept, and from their recollection, so refreshed, each gave testimony in which he stated the number of drinks he had purchased and drank at each particular place on each particular day and his opinion of the character of the liquor they drank, as, that it was malt liquor, or that it was cider with whisky in it, or that it was intoxicating. It is contended that the jury should not have believed these detectives and that this court should not believe them. We expressed our views on this subject in *People v. Gardt,* 175 Ill. App. 80 (affirmed in 258 Ill. 468); and in *People v. Sehrer,* 196 Ill. App. 442; and *People v. Fichter,* 196 Ill. App. 516. The true rule we held to

be that the testimony of a detective is to be treated like that of any other witness, and his interest, if any, in securing compensation from and success for his employer is to be considered the same as the interest of any other witness, and that the jury are the judges of whether he shall be believed. See also, *Hronek v. People,* 134 Ill. 139; *People v. Campbell,* 234 Ill. 391.

The act relating to anti-saloon territory makes it unlawful to sell intoxicating liquor in such territory, and section 1 of said Act (J. & A. ¶ 4637) provides that the term "intoxicating liquor" shall include all distilled, spirituous, vinous, fermented and malt liquors. Proof of the sale of pop and that it was a malt liquor was held to justify a conviction in *Godfriedson v. People,* 88 Ill. 284. Proof of the sale of cider is not sufficient to convict, but if the proof also shows that it intoxicated those who drank it, then a conviction is authorized. *Hertel v. People,* 78 Ill. App. 109. If it is proved that defendant sold spirituous, vinous or malt liquor, that is sufficient to sustain a conviction without proving their intoxicating quality, but as to liquors not named in the statute, it must be proved that they are intoxicating. *Hewitt v. People,* 186 Ill. 336. If a statute forbids the sale of malt liquor, it is only necessary to determine whether the liquor sold was a malt liquor, and its intoxicating properties need not be shown. 23 Cyc. 57-64; *State v. Cummings* (Iowa), 2 L. R. A. 408. Courts take judicial notice that whisky is a spirituous liquor. 16 Cyc. 856, note. It is contended that the court erred in permitting the detectives to testify that certain liquid which they drank in the places of these several defendants was intoxicating liquor or malt liquor or whisky. We are of opinion that they showed by their testimony that they could tell the character and quality of what they drank by drinking it, and that a sufficient foundation was laid for the introduction of their opinion. It

was held in *Com. v. Timothy,* 8 Gray (74 Mass.) 480, that it is competent to permit a witness to testify that a certain liquor is a malt liquor. The defendants offered proof in several of these cases to show that what the detectives drank and what the defendants sold was not intoxicating, nor whisky nor a malt liquor. That left a question of fact for the jury to determine, and in the present case we see no reason to differ from their conclusion.

In some of the cases the defendant succeeded in proving that he supposed or had been assured that what he sold was not intoxicating but, in other instances, that proof was kept out, and the attorney for one defendant was not permitted to state to the jury that he would introduce evidence tending to show that defendant supposed that the drinks he sold were not intoxicating. In cases of this character the intention of the defendant is not material and therefore this proof was not competent nor a defense. *McCutcheon v. People,* 69 Ill. 601; *Farmer v. People,* 77 Ill. 322; *Maguire v. People,* 219 Ill. 16; *People v. Nylin,* 139 Ill. App. 500, and 236 Ill. 19. The jury could only decide the question of guilt or innocence and had nothing to do with the punishment.

In the present case, defendant alleges that he proved a former conviction for the same offense. This is not a correct statement of the evidence. The alleged former conviction was before a justice of the peace on May 17, 1916, and was for a violation of a city ordinance. All proof in this case was of sales at a later date, and a conviction for violation of a city ordinance would not be a defense to a prosecution for a violation of the statute here involved.

Complaint is made of remarks by the court in the presence of the jury in rulings upon the evidence. We do not find reversible error in them. It is to be noted that frequently where the court overruled an objection

by defendant to a question, the answer is not given in the abstract.

In one of these cases, in support of a motion for a new trial, an affidavit was filed which stated that the court ordered the jury to be kept together during the trial and that in violation of that order one juror went to Chicago after the court adjourned at night and returned later in the evening, and it is urged that this was a violation of defendant's rights. We are unable to find either in the abstract or in the record any order requiring the jury to be kept together. In the absence of any order appearing in the records of the court, that fact could only be shown, if at all, by the certificate of the court in the bill of exceptions. What was done by the court must be shown by the bill of exceptions containing a statement to that effect by the trial judge, and cannot be shown by an affidavit, and such affidavit may be disregarded. *Mayes v. People,* 106 Ill. 306; *Peyton v. Village of Morgan Park,* 172 Ill. 102; *Deel v. Heiligenstein,* 244 Ill. 239; *People v. Strauch,* 247 Ill. 220. We so held in *Tindall v. Chicago & N. W. Ry. Co.,* 200 Ill. App. 556, in which case the Supreme Court denied a certiorari. Such an affidavit was considered in the very recent case of *People v. King,* 276 Ill. 138, but its competency was apparently not questioned by counsel. The authorities we have above cited were not referred to and we do not think they should be considered as overruled by implication. Moreover, these are misdemeanors merely, and in misdemeanors it is not error for the jury to separate. Even in felonies not capital, it is not error for the jury to separate. *Sutton v. People,* 145 Ill. 279. It is not shown that defendant was harmed in any way by the fact that the juror went to Chicago.

In this case the judgment rests upon twenty-four counts, including the last or "nuisance" count. Besides sales of malt liquor, there was proof of some

thirty-seven sales of ginger ale and whisky combined, and the chemist testified that he analyzed one of the samples of the latter furnished him by one of the detectives and found that it contained 14.18 per cent. of alcohol by volume. This proof made a case under the twenty-four counts. One of defendant's witnesses testified that he saw one of the detectives putting whisky in the ginger ale. Others testified that the buck, etc., which they drank at defendant's place was not a malt liquor. A chemist testified that he analyzed buck in Chicago furnished him by the company which sold this drink to the defendant, and that the buck he so analyzed was not a malt liquor. None of this was proved to be the same liquor or from the same receptacle from which defendant sold drinks to the detectives. We would not be warranted in saying that the jury should have believed defendant's witnesses and should have disbelieved those for the State.

By the judgment of the court defendant was fined $75 on each of the counts numbered 1 to 5 inclusive, 9 to 12 inclusive, 27 to 39 inclusive, and $100 on each of the fortieth and forty-first counts, besides imprisonment under the fortieth and forty-first counts, making the total of fines $1,850. In view of the facts in this particular case shown in the evidence, and especially that this indictment of this defendant was obtained soon after the anti-saloon law went into force in that territory, and that there is no direct proof that defendant sold intoxicating liquor to any residents of said anti-saloon territory or to any persons except the two detectives, we conclude that the fines are unnecessarily severe for the accomplishment of the purposes of the law. Unless defendant is a wealthy man they bankrupt him and drive him out of a business which he conducts at that place, and which, except in this one particular, is entirely legitimate. It has been a serious question with us how we can afford relief in

this respect. We conclude to modify each one of these fines by reducing the fine under each count excepting the fortieth and forty-first to $37.50, and the fines under the fortieth and forty-first to $50 each, which will make the total fines $925. As so modified the judgment will be affirmed.

*Judgment modified and affirmed.*